UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61665-CIV-COHN

HEATHER MASTERSON, individually, and
as guardian on behalf of ZACHARY
GRATTON, a minor,

Magistrate Judge Seltzer

     Plaintiff,

vs.

APOTEX, CORP., APOTEX, INC., et al.,

     Defendants.

_____/

**ORDER GRANTING MOTION TO DISMISS**
**ORDER TO SHOW CAUSE WHY UNSERVED DEFENDANTS**
**SHOULD NOT BE DISMISSED**

_____THIS CAUSE is before the Court upon the Apotex Defendants' Motions to

Dismiss [DE 32/34], their Memorandum filed in support of the Motions [DE 36], the

Plaintiffs' Response thereto [DE 62], Defendants' Reply [DE 67], and the parties'

Notices of Supplemental Authority [DE's 74/75] submitted pursuant to the Court's

"Minute Order" of May 13, 2008 [DE 71].  The Court has carefully considered all the

filings, and is otherwise fully advised in the premises.

I.  BACKGROUND

Plaintiffs filed this action in Broward County Circuit Court alleging various claims

of negligence and product liability against manufacturers and/or distributors of a

psychopharmaceutical drug that is alleged to have caused birth defects in the minor

child in this case.   Plaintiff Heather Masterson was prescribed and ingested the brand

name drug Paxil, as well as its generic equivalents, during her pregnancy.  Plaintiffs

allege that Defendants failed to warn Plaintiff Masterson of the possible tetragenic

effects of the drugs on her then unborn child.  Her child, Zachary Gratton, was born with certain birth defects, which she alleges were caused by her ingestion of Paxil and the generics.

The regulatory scheme for approval of brand name drugs ("pioneer" or "listed" drugs) and their generic equivalents give the FDA significant authority to approve drugs and their warning labels.  Defendant Apotex Corporation and Defendant Apotex, Inc. (collectively, "Apotex Defendants" or "Apotex") manufacture and distribute the generic product.  Both Paxil and its generic equivalents were approved for use by the FDA and used the FDA-approved warning label, which did not warn against side effects to children during pregnancy.

Defendant SmithKline Beecham, manufacturer of Paxil, removed this case to this Court.  The Court recently denied Plaintiff's motion to remand.  Although Smithkline was dismissed from this case, Apotex moved to dismiss the Complaint on federal preemption grounds.  The parties have fully briefed the motion, as well as filed Notices of Supplemental Authority in response to the Court's request following the United States Court of Appeals for the Third Circuit's decision in Colacicco v. Apotex, 521 F.3d 253 (3rd Cir. 2008).

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that, "a complaint should not be dismissed for failure

to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level."  127 S. Ct. at 1965.   As under Conley, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Id. at 1964-65.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at 1965 (citation omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65.  Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible."  Id. at 1974.

## B.  FDCA Preemption

"A state law that conflicts with a federal law is preempted under the Supremacy Clause of the United States Constitution, art. VI, cl.2."  Mensing v. Wyeth, --- F.Supp.2d ---, 2008 WL 2444689 (D.Minn. June 17, 2008).  The Apotex Defendants assert that the Plaintiffs' state law claims for negligence, negligent design, strict liability (design), strict

liability (failure to warn), and loss of consortium claims are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 21 U.S.C. 301-397, and implementing regulations of the Food and Drug Administration ("FDA"). This exact legal question was recently considered by the United States Court of Appeals for the Third Circuit, resulting in the first published opinion by a federal appeals court on this issue. Colacicco v. Apotex, 521 F.3d 253 (3rd Cir. 2008).

The Third Circuit described in detail in Part II of its opinion the statutory and regulatory provisions that govern FDA approval of newly listed drugs and generic drugs, as well as labeling requirements and post-approval regulation. This Court adopts and incorporates by reference here Part II of the Colacicco opinion discussing the FDA regulatory scheme. 521 F.3d at 257-260.

In Part IV of its opinion, the Third Circuit discussed the various preemption theories and the Supreme Court's decisions affecting the preemption analysis. Preemption can be express or implied, with two forms of implied preemption: "field preemption" and "conflict preemption." Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985). The FDCA does not contain an express preemption provision. Rather, Defendants assert that because it is impossible to comply with both the FDCA and with state common law regarding failure to warn, the state common law is impliedly preempted under the conflict preemption doctrine.

Traditionally, in implied preemption cases, a presumption against preemption existed where Congress has legislated in a field in which the States have traditionally occupied. Medtronic v. Lohr, 518 U.S. 470, 485 (1996). However, recent Supreme Court

4

cases have called this presumption into question in conflict preemption cases.

Colacicco, 521 F.3d at 264, citing United States v. Locke, 529 U.S. 89, 94 (2000),

Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 347-48 (2001) (fraud upon the

FDA claim found preempted), Riegel v. Medtronic, Inc., 128 S.Ct. 999 (2008) (Medical

Device Amendments ("MDA") to FDCA expressly preempt state common law claims --

Supreme Court did not discuss preemption presumption as it did in Lohr, also an MDA

case).

        The Apotex Defendants assert, based upon this recent case law, as well as Geier

v. Am. Honda Motor Co., 529 U.S. 861, 869 (2000),[1] that in conflict preemption cases in

an area of the law with a long-standing federal presence, there is no presumption against

preemption.  Plaintiffs argue that states have long legislated in the area of public safety.

The Colacicco opinion appears to side with the Defendants' view as it stated that

"[defendant's] argument that the presumption against preemption is inapplicable in the

context of implied conflict preemption has more force."  521 F.3d at 265.

        The Court hereby adopts this analysis as well, with the conclusion that the

presumption against preemption is inapplicable in the context of implied conflict

preemption.  In addition, the Court agrees with the Third Circuit and those cases that find

that the FDA's expressed views on preemption are only "entitled to respect," not the full

deference accorded to regulations that have the force of law.  Colacicco, 521 F.3d at

---

        [1] Geier involved an express preemption provision with regard to auto safety that also contained a "savings clause" for state common law tort actions.  The Supreme Court found conflict preemption against such tort claims despite the savings clause. 529 U.S. at 881.

274-75, citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).

### C.  Generic Drugs and Preemption

At this point, having determined that implied preemption of state tort claims regarding failure to warn of certain dangers of prescription drugs could be proper, the facts of this case differ from those present in <u>Colacicco</u>.  In <u>Colacicco</u>, the plaintiffs were suing for failure to warn of the increased dangers of suicide in patients taking Paxil and its generic equivalents.  The FDA had specifically considered an additional warning for adult suicidality several times and rejected such a warning.  <u>Id.</u> at 269.  The Third Circuit stated that "a state-law obligation to include a warning asserting the existence of an association between [Paxil] and suicidality directly conflicts with the FDA's oft-repeated conclusion that the evidence did not support such an association."  <u>Id.</u> at 271.  Therefore preemption was proper in <u>Colacicco</u> because the FDA had clearly and publicly stated its position that no warning was required prior to the prescriptions and deaths at issue.   <u>Id.</u>

The Third Circuit specifically did not address the issue relevant to the case at bar concerning whether claims against "generic drug manufacturers are preempted on the basis of their obligations under the Hatch-Waxman Amendments [to the FDCA]."  <u>Id.</u> Rather, the holding is "limited to circumstances in which the FDA has publicly rejected the need for a warning that plaintiffs argue state law requires."  <u>Id.</u> at 272.[2]

---

[2]  The Third Circuit noted that the Supreme Court of Vermont has held that there is no preemption "because federal labeling requirements create a floor, not a ceiling, for state regulation."  <u>Colacicco</u>, 521 F.3d at 271-72, n. 17, *quoting* <u>Levine v. Wyeth</u>, 944 A.2d 179, ¶ 6 (Vt. 2006), *cert. granted*, 128 U.S. 1118 (2008).

The Apotex Defendants assert that the result in <u>Colacicco</u> supports their argument that the more stringent labeling requirements on generic drugs leave no room for a generic manufacturer to change a label to comport with state law.[3]  Following Congressional approval of the Hatch-Waxman Act, FDA authority to reject generic drugs is limited.  Generic drugs are now approved after filing of an Abbreviated New Drug Application ("ANDA"), in which the manufacturer must show bioequivalency to a listed pioneer drug, but need not submit new safety studies.  21 U.S.C. § 355(j)(2)(A)(iv) and sentence at end of subsection (j)(2)(A).  Generic drugs are required to have the same label as the listed drug.  21 U.S.C. § 355(j)(2)(A)(v); 21 C.F. R. § 314.150(b)(10) (regulation allowing FDA to withdraw approval of an ANDA if labeling not consistent with listed drug).

Apotex further argues that while drug manufacturers of listed drugs have some ability to change or request a change to drug labeling by the FDA, a generic drug must continue to have the same label as the pioneer listed drug to which it is bioequivalent.  Compare 21 C.F.R. 314.70(c)(6)(iii)(A) with 21 C.F.R. § 314.150(b)(10).  Therefore, if state law regarding failure to warn is not preempted, it would be impossible for Apotex to meet both requirements.

Plaintiffs argue that the Hatch-Waxman Amendments act only to limit FDA actions toward generic manufacturers, but do not diminish Apotex's responsibilities to comply

---

[3]  The Court notes that the key factual distinction between the present Paxil birth defect cases and <u>Colacicco</u> is that the FDA has never considered a warning with regard to birth defects.  However, in the case at bar, only the generic manufacturer is left in the case, so the Court need not consider in this instance whether a failure to warn claim against a manufacturer of Paxil, a listed drug, is preempted.

with state law.   They argue that Apotex as a generic manufacturer could have sought an exception to the labeling requirements from the FDA to comply with state laws.  Plaintiffs argue 21 C.F.R. § 314.150(b)(10) allows certain exceptions to the "same label" requirement.  However, those exceptions relate only to whether a new patent was granted on the listed drug or whether a period of exclusivity is accorded to the listed drug.  21 C.F.R. § 314.150(b)(10)(i) and (ii).

Plaintiffs assert that Apotex had an obligation under both federal and state law to disclose all known risks and seek to update its labeling to protect the public safety, regardless of the FDA's limitations.  They assert that Defendants could have complied with both state and federal law.   They characterize their state law claims as "parallel claims" to the alleged violations of FDA regulations for the failure of Apotex to disclose known risks.

Finally, citing to case law from other Circuits, Plaintiffs assert that the Complaint alleges design defect claims that are not preempted.  Even if federal labeling requirements preempt failure to warn claims, the FDA regulatory scheme does not shield manufacturers from liability for defects during the manufacturing or design process.

Following the <u>Colacicco</u> opinion, only one district court has  considered this exact question whether preemption does apply to claims against a generic manufacturer for failure to warn claims based upon the labeling ("labeling" includes inserts given to patients by physicians and/or pharmacists).[4]  <u>Mensing v. Wyeth</u>, --- F.Supp.2d ---, 2008

---

[4] On July 18, 2008, Plaintiffs submitted a Notice of Supplemental Authority relying upon <u>Tucker v. SmithKline Beechum Corp.</u>, 2008 WL 2788505 (S.D.Ind. 2008). In <u>Tucker</u>, the District Court reversed its earlier ruling dismissing the case on

WL 2444689 (D.Minn. June 17, 2008).[5]  The Minnesota court concluded that a generic manufacturer has no legal duty to propose revised labeling to the FDA, and even if it does voluntarily propose such a change, approval of the change with regard to the generic product and the listed drug is left to the discretion of the FDA.  2008 WL 2444689 at *8.  Thus, the result of that request would "require speculation about what the FDA might have done."  Id.  Therefore, the Court concluded that imposing an affirmative state law duty to add safety information upon a generic manufacturer would directly conflict with the statutory scheme of the Hatch Waxman Act.  Id.

This Court agrees with the analysis and conclusion of the decision in Mensing finding preemption of state law failure to warn claims against a generic manufacturer/distributor such as the Apotex Defendants.  Because the FDA, pursuant to the FDCA statutory scheme as amended by the Hatch Waxman Act, requires generic drugs to have the same labeling as listed drugs, these federal laws preempt such a state law claim.  Unlike a manufacturer of a listed drug, a generic manufacturer has a limited ability to even suggest a labeling change, subject solely to the discretion of the FDA to

_____

preemption grounds.  This case involved a claim for failure to warn of increased suicidality upon ingestion of Paxil, a listed drug (i.e., not a generic drug).

[5]  Another post-Colacicco decision concluded that state law claims were preempted against a generic manufacturer of an over-the-counter ("OTC") drug.  Gaeta v. Perrigo Pharmaceuticals Company, --- F.Supp.2d ---, 2008 WL 2548813 (N.D. Cal. June 13, 2008).  However, as in Colacicco, the Gaeta decision also mentioned that the FDA had once rejected a warning as to the ibuprofen drug at issue.

A third decision involving similar facts as Colacicco also followed that decision.  Mason v. Smithkline Beecham Corp., 546 F.Supp.2d 618 (C.D. Ill. 2008) (preemption of claims of failure to warn of suicidality for Paxil).

change the labeling for both the generic and the listed drug.  Therefore, compliance with a state law duty to warn would conflict with the federal statutory scheme.

However, this preemption does not extend to manufacturing defect claims that arise separate and apart from a failure to warn claim.  Given that the Complaint in this case appears to merge the theories of failure to warn and design/manufacturing defect under broader theories of negligence and strict liability, the Court will grant the present motion to dismiss, without prejudice to Plaintiffs filing an amended complaint separating out the failure to warn, design defect, and manufacturing defect claims.[6]

### III. CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1.   The Apotex Defendants' Motion to Dismiss [DE 32] is hereby **DENIED** as moot, as a duplicate docket entry;

2.   The Apotex Defendants' Motion to Dismiss [DE 34] is hereby **GRANTED in part** as to failure to warn claims, but **DENIED** as to design defect and manufacturing defect claims;

3.   Defendant SmithKline Beecham's Joint Motion to Continue [DE 17] is hereby **DENIED** as moot;

4.   Plaintiffs shall file an Amended Complaint by August 29, 2008 pursuant to this Order;

5.   Plaintiffs shall show cause by August 29, 2008, why unserved Defendants Alpha

---

[6]   Plaintiffs may restate their failure to warn claims in the same document, which though they would be subject to dismissal pursuant to this Order, would allow a cleaner record for appellate purposes.

Pharm Party Ltd., a/k/a Alphapharm, and Teva Pharmaceuitical Industries Ltd,

a/k/a Teva Pharmaceutical USA, Inc., should not be dismissed for failure to serve.

6.      Failure to timely show cause shall result in dismissal of these defendants for

failure to serve.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 7th day of August, 2008.

JAMES I. COHN
United States District Judge

Copies furnished to:

Counsel of record on CM/ECF